# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### NEWARK DIVISION

| | |
|---|---|
| TELEBRANDS CORP., | |
| Plaintiff, | Civil Action No. 2:15-cv-03163-EP-MAH |
| v. | Judge Evelyn Padin |
| RAGNER TECHNOLOGY CORPORATION et al., | Magistrate Judge Michael A. Hammer |
| Defendants. | |
| TELEBRANDS CORP., | |
| Plaintiff, | Civil Action No. 2:16-cv-03594-EP-MAH |
| v. | Judge Evelyn Padin |
| RAGNER TECHNOLOGY CORPORATION et al., | Magistrate Judge Michael A. Hammer |
| Defendants. | **Return Date: March 17, 2025** |

## MEMORANDUM IN SUPPORT OF
## TELEBRANDS' MOTION FOR ATTORNEY'S FEES AND EXPENSES

Jeffrey L. Snow
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
(212) 421-4100
jsnow@pryorcashman.com

David S. Stone
**STONE & MAGNANINI LLP**
100 Connell Drive
Berkeley Heights, New Jersey 07922
(973) 218-1111
dstone@smcomplex.com

*Attorneys for Telebrands Corp. and Bulbhead.com, LLC*

## <u>TABLE OF CONTENTS</u>

**PAGE(s)**

TABLE OF AUTHORITIES ................................................................ iv

I.    INTRODUCTION ...................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................2

    A.    The Patents-in-Suit Asserted Against Telebrands ...................................2

    B.    The Consolidated Cases ...........................................................3

        1.    Activity in the Consolidated Cases ..........................................4

            a.    Plaintiffs' Supplemental Examination of the '076 Patent...............4

            b.    Covenant Not to Sue and Implied License to Patents-in-Suit.........5

            c.    First Reexamination of the '448 Patent ...........................5

            d.    Termination of Plaintiffs' License Agreements.............................6

        2.    Related Litigation.......................................................7

    C.    The Reexaminations of the Patents-in-Suit and Dismissal of the Patent Infringement Claims ...........................................................7

III.  ARGUMENT ....................................................................8

    A.    Legal Standards..................................................................8

        1.    Exceptional Cases Under 35 U.S.C. § 285 .................................8

        2.    Inequitable Conduct Giving Rise to an Exceptional Case ........................10

    B.    Telebrands Is the Prevailing Party .................................................13

    C.    This Court Should Declare the Dismissed Cases Exceptional.............................14

        1.    Plaintiffs' Litigating Positions Were Exceptionally Weak and Unreasonable For Perpetuating Patent Infringement Claims Against

Telebrands That Were Doomed from Their Inception, Which Became Clearer Throughout the Litigation ................................................14

    a.    The '076 and '944 Patents ............................................................15

        (1).    Inequitable Conduct in the Filing of the '076 Patent .........15

        (2).    Inequitable Conduct Confirmed in the Supplemental Examination of the '076 Patent...........................................17

        (3).    Plaintiffs' Own Actions in Correcting the Inventorship of the Berardi '941 Patent Directly Resulted in the PTO's Determination of Unpatentability of the '076 and '944 Patents ...............................................................................18

        (4).    Plaintiffs Knew They Had No Infringed Claims to Assert Against Telebrands ...........................................................20

    b.    The '057 Patent ...........................................................................22

    c.    The '448 Patent ...........................................................................23

  2.    Plaintiffs Litigated the Consolidated Cases in an Unreasonable Manner ......................................................................................25

IV.    THE COURT SHOULD EXERCISE ITS DISCRETION TO AWARD ATTORNEY'S FEES BECAUSE THE CASE IS EXCEPTIONAL AND TELEBRANDS' CLAIMED ATTORNEY'S FEES AND COSTS ARE REASONABLE...........................................28

V.    FEES AND EXPENSES SOUGHT ................................................................29

VI.    CONCLUSION.............................................................................................30

## **TABLE OF AUTHORITIES**

**CASES**                                                                      **PAGE(s)**

*Agfa Corp. v. Creo Prods. Inc.*,
    451 F.3d 1366 (Fed. Cir. 2006)..........................................................................15

*Amazon.com, Inc. v. PersonalWeb Techs. LLC*,
    85 F.4th 1148 (Fed. Cir. 2023) .......................................................................10

*AMP v. United States*,
    389 F.2d 448 (Ct. Cl. 1968) ............................................................................26

*Astrazeneca AB v. Dr. Reddy's Labs.*,
    No. 07-6790, 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010)............................14

*B.E. Tech., L.L.C. v. Facebook, Inc.*,
    940 F.3d 675 (Fed. Cir. 2019).........................................................................13

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
    977 F.2d 1555 (Fed. Cir. 1992).......................................................................28

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983).......................................................................30

*Cheetah Omni LLC v. AT&T Servs., Inc.*,
    949 F.3d 691 (Fed. Cir. 2020).........................................................................26

*CRST Van Expedited, Inc. v. E.E.O.C.*,
    136 S. Ct. 1642 (2016)......................................................................................9

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
    No. 12-764, 2015 WL 1284669 (E.D. Tex. Mar. 20, 2015) ...................................12

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
    903 F.2d 805 (Fed. Cir. 1990).................................................................10, 22

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    No. 05-897, 2018 U.S. Dist. LEXIS 88011 (D.N.J. May 23, 2018)...................9-13

*ICOS Vision Sys. Corp. v. Scanner Techs. Corp.*,
    No. 10-604, 2012 WL 512641 (S.D.N.Y. Feb. 15, 2012).......................................26

*In re TR Labs Patent Litig.*,
  MDL No. 2396, 2014 WL 3501050 (D.N.J. July 14, 2014) ................................... 26

*Intellect Wireless, Inc. v. Sharp Corp.*,
  45 F. Supp. 3d 839 (N.D. Ill. 2014) ...................................................................... 11

*J.P. Stevens Co. v. Lex Tex Ltd.*,
  822 F.2d 1047 (Fed. Cir. 1987) ............................................................................. 28

*Kilopass Tech., Inc. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013) ............................................................... 10, 14, 28

*Lugus IP, LLC v. Volvo Car Corp.*,
  No. 12-2906, 2015 WL 1399175 (D.N.J. Mar. 26, 2015) ............................... 14, 30

*Luv N' Care, Ltd. v. Laurain*,
  98 F.4th 1081 (Fed. Cir. 2024) .......................................................... 9, 12-13

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
  No. 15-4431, 2023 U.S. Dist. LEXIS 95318 (D.N.J. June 1, 2023) .......................... 9

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
  362 F. Supp. 2d 526 (D.N.J. 2005) ....................................................................... 15

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007) ............................................................................. 12

*Novartis Corp. v. Webvention Holdings LLC*,
  No. 11-3620, 2015 WL 6669158 (D. Md. Oct. 28, 2015) ...................................... 13

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) ............................................................................. 21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ............................................................................... 9, 10, 13

*Ohio Willow Wood Co. v. Alps South, LLC*,
  735 F.3d 1333, 1346 (Fed. Cir. 2013) ................................................................... 11

*Parallax Grp. Int'l, LLC v. Incstores LLC*,
  No. 16-929, 2023 U.S. Dist. LEXIS 234161 (C.D. Cal. Dec. 6, 2023) ................... 10

*Raniere v. Microsoft Corp.*,
   887 F.3d 1298 (Fed. Cir. 2018)................................................................. 9, 13-14

*SFA Sys., LLC v. Newegg, Inc.*,
   793 F.3d 1344 (Fed. Cir. 2015)....................................................................10

*Shum v. Intel Corp.*,
   629 F.3d 1360 (Fed. Cir. 2010).....................................................................9

*Source Search Techs., LLC v. Kayak Software Corp.*,
   No. 11-3388, 2016 WL 1259961 (D.N.J. Mar. 31, 2016) ....................................20

*Special Devices, Inc. v. OEA, Inc.*,
   269 F.3d 1340 (Fed. Cir. 2001).....................................................................29

*Stragent, LLC v. Intel Corp.*,
   No. 11-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014) ...................................10

*Taltech Ltd. v. Esquel Enterprises Ltd.*,
   604 F.3d 1324 (Fed. Cir. 2010)....................................................................12

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013)....................................................................14

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc)........................................................11

*TransCore, LP v. Electronics Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009)....................................................................26

*United Cannabis Corp. v. Pure Hemp Collective Inc.*,
   66 F.4th 1362 (Fed. Cir. 2023) ....................................................................13

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
   No. 12-1285, 2016 WL 3436396 (D. Del. June 15, 2016) ...................................30

*Zoltek Corp. v. United States*,
   51 Fed. Cl. 829 (2002) ...............................................................................21

## STATUTES & RULES

35 U.S.C. § 135(b) ...........................................................................4, 7, 15

35 U.S.C. § 256 .........................................................................................................7

35 U.S.C. § 257 ......................................................................................................4, 17

35 U.S.C. § 285 ....................................................................................... 1, 8-12, 14, 30

35 U.S.C. § 301 ...................................................................................................22, 24

37 C.F.R. § 1.510(a) .................................................................................................5

37 C.F.R. § 10.23(c)(7) ...........................................................................................16

Fed. R. Civ. P. 54(b) ...............................................................................................1

L. Civ. R. 54.2(a) ....................................................................................................1

L. Civ. R. 105.1 .......................................................................................................27

N.J. R.P.C. 1.7(a)(1) ...............................................................................................26

## OTHER

Manual of Patent Examining Procedure § 2001 .......................................................16

Manual of Patent Examining Procedure § 2212 .......................................................5

Manual of Patent Examining Procedure § 2801 .......................................................4

Telebrands Corp. and Bulbhead.com, LLC[1] (collectively, "Telebrands") hereby move, pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 54(b), L. Civ. R. 54.2(a), and the Court's inherent equitable powers, for an award of attorney's fees and expenses in the above-captioned actions.

## I.    INTRODUCTION

This Court *dismissed with prejudice* Tristar Products, Inc.'s ("Tristar's") and Ragner Technology Corp.'s ("Ragner's") (collectively, "Plaintiffs'") patent infringement claims against Telebrands *after nearly ten years of litigation*. Mem. & Order, Dkt. No. 273 in 15-3163 & Dkt. No. 254 in 16-3594. Having spent a decade and multiple millions of dollars to get to this point, it is cold comfort to Telebrands to know it has finally prevailed. Telebrands asks this Court to declare the dismissed cases "exceptional" and award Telebrands fees and costs it expended to defeat Plaintiffs' baseless patent infringement claims.

Around 2011, desperate to enter the burgeoning market for expandable garden hoses, Tristar acquired a patent position to assert infringement claims against its competitors, including Telebrands. Tristar teamed up with Ragner to license a collection of obsolete patents that did not cover the innovative expandable hoses on the market (including Tristar's own product), which all operated using *elastic tubes*. In contrast, Ragner's patents were based on an older vacuum-cleaner hose technology and required a *spring*. The Consolidated Cases are part of Plaintiffs' scheme to harass and compete unfairly with their competitors, including bringing baseless claims founded on invalid and unenforceable patents and misappropriating the competitors' intellectual property.

Plaintiffs' patent infringement claims against Telebrands were doomed from their inception, as borne out by the disastrous results of *Plaintiffs' own actions* throughout the litigation.

---

[1] Plaintiffs alleged that Bulbhead.com is an entity "affiliated with Telebrands" with the name of Telebrands' website, bulbhead.com. Dkt. No. 59 in 16-3474 (Counterclaim ¶ 15).

Rather than assess their infringement claims at each stage, as they were required to do, Plaintiffs vexatiously pursued their frivolous and unreasonable claims in bad faith, including through inequitable conduct before the U.S. Patent and Trademark Office ("PTO") and a host of litigation misconduct including bringing even more litigation after the claims of the asserted patents-in-suit were cancelled by the PTO.

With this motion for attorney's fees, Telebrands distills a decade of complex patent litigation to highlight the reasons this is an exceptional case. Telebrands understands it is asking this Court to wade into the long, complex record of these cases; however, unless the Court does so, Plaintiffs will be rewarded for the duration and extent of their fraud, while Telebrands, which "won" the litigation, will have expended millions of dollars in its defense. This case is "exceptional" in every sense and is one for which this Court should compensate Telebrands for its losses in defending itself and to deter Plaintiffs from similar misconduct in the future.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Patents-in-Suit Asserted Against Telebrands

The four patents asserted by Plaintiffs against Telebrands are U.S. Patent Nos. 7,549,448, ("the '448 patent"), 9,022,076 ("the '076 patent"), 9,371,944 ("the '944 patent"),[2] and 9,182,057 ("the '057 patent") (collectively, "patents-in-suit"). Declaration of Jeffrey L. Snow in Support of Motion for Attorney's Fees ("Snow Dec.") Exs. 1-4; Dkt. No. 199 in 16-3594, at 2 n.1. Gary Ragner is a named inventor of all four patents and, as Plaintiffs alleged, Ragner had owned the patents-in-suit and Tristar claimed to be the exclusive licensee to the patents.

---

[2] The '944 patent is a direct continuation of the '076 patent and shares a common description or specification.

The technology of the patents-in-suit relates to expandable and contractible garden hoses.[3] This Court has characterized the patents as "interrelated" because they share substantial portions of their specifications. *Id*. at 8.

## B.    The Consolidated Cases

The Consolidated Cases include four actions involving Telebrands,[4] which were consolidated with an earlier case Plaintiffs brought against National Express, Inc., E. Mishan & Sons, and DAP Products, Inc. (collectively, "National Express Defendants")[5] and involving three of the same patents (the '448, '076, and '944 patents). Significantly, in all four of its actions, Telebrands brought claims against Plaintiffs for unenforceability of the '076 patent based on inequitable conduct before the PTO.[6] Such inequitable conduct, which would prevent Plaintiffs

---

[3] In the accused Telebrands products, which are sold under the brand POCKET HOSE, the hose includes an *elastic inner tube* and an outer fabric cover, which are unconnected to each other except at the ends where there are connectors to attach one end of the hose to a spigot that supplies pressurized water and to attach the other end to a nozzle that may be opened to allow pressurized water to flow through the hose. The POCKET HOSE products, which are lightweight and easy to use—and as aided by Telebrands' superior manufacturing, distribution, and marketing—have been Telebrands' most successful consumer product line. Declaration of Bala Iyer ("Iyer Dec.") ¶¶ 7-8.

[4] No. 2:15-cv-03163-EP-MAH ("15-3163 case") (including Plaintiffs' patent infringement claims under the '076 and '448 patent); 2:15-cv-08185-EP-MAH ("15-8185 case") (including Plaintiffs' patent infringement claims under all four patents-in-suit); No. 2:16-cv-03474-EP-MAH ("16-3474 case") (claims mirroring 15-8185 case); No. 2:16-cv-03594-EP-MAH ("16-3594 case") (including Plaintiffs' patent infringement claims under the '944 patent). Plaintiffs originally filed the 15-8185 case in the District of Delaware, asserting the '448 patent against Telebrands and two customers of the POCKET HOSE products. No. 1:15-cv-00741 (D. Del.). Acknowledging the significant litigation that had already been pending in the District of New Jersey relating to the patents-in-suit, the Delaware District Court severed and transferred the claim against Telebrands to this District. Dkt. No. 21 in 15-8185. After transfer, the pleadings were amended to include Plaintiffs' patent infringement claims under all four patents-in-suit, name Bulbhead.com, LLC as an adverse party, and raise Plaintiffs' claims for false advertising, unfair competition, and tortious interference with prospective business advantage, which remain in the case.

[5] No. 2:13-cv-07752-EP-MAH ("13-7752 case"). On April 21, 2016, the 15-8185 and 15-3163 cases were consolidated with the 13-7752 case. Dkt. No. 44 in 15-8185. On August 17, 2017, the 16-3594 and 16-3474 cases were consolidated with the 13-7752 case. Dkt. No. 39 in 16-3594.

[6] Telebrands filed the 15-3163 case as a declaratory judgment action against Plaintiffs on the day the '076 patent issued.

from enforcing the '076 patent, arose because Plaintiffs copied claims from an earlier patent, U.S. Patent No. 8,291,941 ("the Berardi '941 patent'), into their own patent application more than one year after the Berardi '941 patent issued—a blatant violation of the Patent Statute, 35 U.S.C. § 135(b) (pre-AIA)—and violated their duty of candor to the PTO by failing to inform the patent examiner of the copying. *See* Dkt. No. 127-1 in 13-7752, at 3.

### 1.    Activity in the Consolidated Cases

After consolidation, all of the patent infringement claims became intertwined. The parties litigated the patent infringement claims with respect to all of the patents-in-suit in unison, including in connection with the extensive discovery and document production, patent-related contentions, and *Markman* claim construction briefing and proceedings that ensued.[7]

### a.    Plaintiffs' Supplemental Examination of the '076 Patent

Shortly after Telebrands filed the 15-3163 case, and in response to Telebrands' assertions of unenforceability for inequitable conduct, Plaintiffs filed and pursued supplemental examination[8] of the '076 patent in the PTO pursuant to 35 U.S.C. § 257 in a misguided attempt to "cleanse" the patent from the inequitable conduct by asking the PTO to examine the patent in light of the Berardi '941 patent from which they had inappropriately copied claims and violated their duty of candor.[9] However, Plaintiffs' supplemental examination was a baseless ruse since they could never overcome the inequitable conduct because Telebrands had already pled the issue in the 15-3163 case. 35 U.S.C. § 257(c)(2)(a) (taint of unenforceability cannot be removed through

---

[7] Between July 2019 and December 2021, the parties participated in court-ordered mediation relating to all disputes between the parties to the Consolidated Cases.

[8] Manual of Patent Examining Procedure ("MPEP") § 2801 (Supplemental examination "provide[s] a patent owner with a mechanism to request that the Office consider, reconsider, or correct information believed to be relevant to the patent," and differs from *ex parte* reexamination in that supplemental examination is "not limited to patents and printed publications.")

[9] The supplemental examination was converted into an *ex parte* reexamination.

consideration of information in supplemental examination when unenforceability allegation was pled with particularity in civil action). Moreover, as the PTO made clear in its final decision on this post-grant proceeding, the inequitable conduct was clear from the prosecution history of the '076 patent, but because Plaintiffs belatedly copied claims from the Berardi '941 patent into the application that issued as the '076 patent and failed to inform the patent examiner, the PTO could not address the issue at that late stage after the '076 patent had already issued.

### b.    Covenant Not to Sue and Implied License to Patents-in-Suit

During the litigation, another patent related to the '076 and '944 patents, U.S. Patent No. 10,309,560 ("the '560 patent"), issued to Ragner (Snow Dec. Ex. 5). Given the closeness of subject matter of the '560 patent with that of the patents-in-suit, Telebrands was concerned about Plaintiffs' ability to bring further infringement claims and thus sought to bring the patent into the litigation. Dkt. No. 340 in 13-7752, at 2. Plaintiffs resisted Telebrands' efforts (Dkt. No. 353 in 13-7752) until March 2022, when they elected *unilaterally* to provide Telebrands with a covenant not to sue with respect to the '560 patent. This covenant not to sue legally gave rise to an *implied license* to all of the Ragner patents-in-suit, which would have resulted in evisceration of Plaintiffs' patent infringement damages claims under all of these patents. Defensively, Plaintiffs tried to prevent Telebrands from amending the pleadings to incorporate this implied license defense. Dkt. No. 359 in 13-7752; Dkt. Nos. 369-370 (motion to amend to incorporate implied license defense).[10]

### c.    First Reexamination of the '448 Patent[11]

---

[10] These issues were never resolved by the Court in light of intervening events, including the first *ex parte* reexamination of the '448 patent and the motion to disqualify Plaintiffs' counsel, discussed below. Dkt. No. 372 in 13-7752.

[11] 37 C.F.R. § 1.510(a) ("Any person may, at any time during the period of enforceability of a patent, file a request for an *ex parte* reexamination by the Office of any claim of the patent on the basis of prior art patents or printed publications. . ."); MPEP 2212 ("35 U.S.C. § 302 and 37 C.F.R. § 1.510(a) both indicate that 'any person' may file a request for *ex parte* reexamination of

In March 2022, Telebrands filed in the PTO a *first* request for *ex parte* reexamination with respect to all of the asserted claims of the '448 patent based on newly found invalidating prior art.[12] The Court issued a stay of the Consolidated Cases on July 5, 2022, during the pendency of the reexamination proceedings. Dkt. No. 199 in 16-3594. This reexamination resulted in the PTO's *cancellation* of the asserted claims of the '448 patent in the Consolidated Cases on December 15, 2022, and rendering moot the corresponding patent causes of action.

### d.    Termination of Plaintiffs' License Agreements

Several significant events followed. Tristar and Ragner had a falling out that resulted in Ragner's terminating its license agreements with Tristar in August 2022. Tristar immediately filed an action against Ragner for breach of contract. No. 3:22-cv-05043-MAS-DEA (D.N.J.). For purposes of this litigation, the principal issue that arose from Tristar's suit against Ragner was that *counsel who represented both Tristar and Ragner in the Consolidated Cases sued Ragner on behalf of Tristar*, thereby creating an unwaivable and irreconcilable conflict of interest and causing substantial delay and additional expense in the litigation.[13]

After Ragner terminated its license agreements with Tristar, Ragner entered into an agreement with Telebrands that permitted Telebrands to acquire ownership of the patents-in-suit, along with other patents, from Ragner. On September 27, 2023, Telebrands recorded in the PTO an assignment from Ragner of all right, title and interest to the patents-in-suit. Snow Dec. Ex. 6.

---

a patent. . . Accordingly, there are no types of 'persons' who are excluded from being able to seek reexamination under 35 U.S.C. § 302.").

[12] The '448 patent, which issued on June 23, 2009, was an obvious target for reexamination because it was the only patent-in-suit that could have provided a basis for an award of patent infringement damages prior to August 2015 when the '076 patent issued.

[13] Telebrands brought a motion to disqualify Tristar's and Ragner's counsel, but the Court did not decide the motion and instead ordered the case back to mediation for a second time. Dkt. Nos. 390 & 408 in 13-7752.

### 2.    Related Litigation

The Consolidated Cases follow from an even greater collection of cases, all relating to expandable hoses and involving the same parties, dating back to 2012. The significant case among the related (but not consolidated) litigation is No. 2:13-cv-01758-EP-MAH ("13-1758 case"), also pending before this Court. In the 13-1758 case, Telebrands is asserting patent infringement claims against Tristar under a group of related patents it acquired from Blue Gentian, LLC, including the Berardi '941 patent from which Plaintiffs impermissibly copied claims into the application that issued as the '076 patent in violation of 35 U.S.C. § 135(b) and the duty of candor to the PTO.

Significantly, in the 13-1758 case, Tristar moved under 35 U.S.C. § 256 to add Ragner's principal, Gary Ragner, as a co-inventor to the Berardi '941 patent and related patents based on meeting between the parties. The Court granted Tristar's motion, which was affirmed by the U.S. Court of Appeals for the Federal Circuit on June 9, 2023. Dkt. Nos. 548 & 585 in 13-1758. As a result, Mr. Ragner was determined to be a common inventor of the Berardi '941 patent, along with being a common inventor of the '076 and '944 patents-in-suit. This created a problem for Plaintiffs because there were now *two* sets of issued patents having a common inventor for essentially the same invention, resulting in impermissible double patenting invalidating the '076 and '944 patents.

### C.    The Reexaminations of the Patents-in-Suit and Dismissal of the Patent Infringement Claims

In late 2023, Telebrands filed further *ex parte* reexamination requests, this time for all four patents-in-suit. The legal relationship between the patents had changed as a result of the Federal Circuit's affirming Gary Ragner as a co-inventor of the Berardi '941 patent. Additionally, Telebrands had located new invalidating prior art to be asserted against the '057 patent. Finally, having successfully sought cancellation of the asserted claims of the '448 patent in the first

reexamination, Telebrands was in a position to seek cancellation of the remaining invalid claims based on the same prior art.

The PTO instituted reexaminations of all patents-in-suit, finding substantial new questions of patentability based on invalidating prior art (for the '448 and '057 patents) and for obviousness-type double patenting as a result of common inventorship (for the '076 and '944 patents in view of the Berardi '941 patent). Snow Dec. Ex. 7. Tristar attempted improperly to *interfere* with these *ex parte* reexamination proceedings by filing petitions to the director and notices to the patent examiner objecting to the reexaminations and having their non-public, unauthorized submissions immediately published through legal news service Law360 in an attempt to derail the proceedings; however, the PTO *sua sponte* expunged Tristar's submissions as "improper" and instead found that the reexamination proceedings were "compliant" with the PTO's rules. Snow Dec. Exs. 8-9.

Upon the PTO's issuance of *ex parte* reexamination certificates for the patents-in-suit cancelling all of the patent claims, the patent infringement causes of action, counterclaims, and defenses in the Consolidated Cases were rendered moot. Following the decisive loss of all of the patents-in-suit and Plaintiffs' attendant claims for damages, Tristar did not seek to cut its losses and end the dispute; rather, Tristar continued its vexatious litigation tactics by filing a baseless new action in the Northern District of Florida, *Tristar Products Inc. v. Telebrands Corp., et al.*, No. 3:24-cv-00238-MCR-HTC, naming both Telebrands and Telebrands' undersigned outside counsel on untenable claims of fraud, conspiracy, civil RICO violations, and attempted monopolization based on the *compliant* reexamination proceedings.

## III.    ARGUMENT

### A.    Legal Standards

#### 1.    Exceptional Cases Under 35 U.S.C. § 285

The patent statute provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Under the statute, there are two basic requirements for an award of attorneys' fees: (1) the party seeking fees is the "prevailing party" and (2) the case is "exceptional." A party must prove its entitlement to fees under § 285 by a preponderance of the evidence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557-58 (2014); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05-897, 2018 U.S. Dist. LEXIS 88011, at *4 (D.N.J. May 23, 2018).

To be the "prevailing party," there must be the "necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court could entertain [the defendant's] fee claim under 35 U.S.C. § 285." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018); *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) ("[T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."). For purposes of awarding attorney fees under § 285, "there can be only one winner." *Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024) (quoting *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010)).

An exceptional case "is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *4; *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2023 U.S. Dist. LEXIS 95318, at *24-*25 (D.N.J. June 1, 2023). Courts consider the "totality of the circumstances" when determining whether a case is exceptional, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of

compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at \*5; *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). No single element is dispositive, and considerations can include "bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, [and] litigation misconduct." *Stragent, LLC v. Intel Corp.*, No. 11-421, 2014 WL 6756304, at \*3 (E.D. Tex. Aug. 6, 2014).

Section 285 discourages certain exceptional conduct by imposing the cost of bad litigation decisions on the decision maker. *Parallax Grp. Int'l, LLC v. Incstores LLC*, No. 16-929, 2023 U.S. Dist. LEXIS 234161, at \*27 (C.D. Cal. Dec. 6, 2023). Significantly, a case may be declared exceptional when a party continues to prosecute the case it knows is without merit. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) ("The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitute grounds for declaring a case exceptional under 35 U.S.C. § 285."); *Amazon.com, Inc. v. PersonalWeb Techs. LLC*, 85 F.4th 1148, 1161 (Fed. Cir. 2023) (affirming finding of exceptionality for unreasonable litigation conduct in light of the requirements that "the attorney must continually reevaluate the positions advanced" and "must continually assess the soundness of pending infringement claims").

Moreover, reasonable attorney's fees may be granted to a prevailing party in exceptional cases "to prevent an alleged infringer from suffering a gross injustice." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). "[Section] 285 is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust . . . to require it to bear its own costs." *Id*.

## 2.    Inequitable Conduct Giving Rise to an Exceptional Case

In connection with an attorney's fees motion, the Court may consider a party's conduct before the PTO. "[P]revailing on a claim of inequitable conduct often make a case 'exceptional,' leading potentially to an award of attorneys' fees under 35 U.S.C. § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc); *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 851 (N.D. Ill. 2014) ("Plaintiff likely would not have obtained the patents at issue nor sued the Defendants here for infringement" had it not committed inequitable conduct.).

Proving inequitable conduct requires showing that: (1) the undisclosed information was material, *i.e.*, but for the deceptive conduct, the PTO would not have allowed a claim; and (2) "the patentee acted with specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290-91; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *6. In cases involving "'affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit,' materiality is presumed." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1346 (Fed. Cir. 2013). Such misconduct is material *per se* because "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." *Therasense*, 649 F.3d at 1292.

To satisfy the intentionality prong of the inequitable conduct standard, the moving party must show that the patent applicant knew of the information, knew it was material, and made a deliberate decision to withhold it from the PTO. *Therasense*, 649 F.3d at 1291; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *6. "Because direct evidence of deceptive intent is rare," a court may infer intent from indirect and circumstantial evidence, provided that the inference is the "single most reasonable inference" available and that the evidence is sufficient to require a finding of deceitful intent "in light of all of the circumstances." *Therasense*, 649 F.3d at 1290; *see also*

*Taltech Ltd. v. Esquel Enterprises Ltd.*, 604 F.3d 1324, 1332 (Fed. Cir. 2010) (deceptive intent could be properly inferred from failure to disclose). A deliberate decision to withhold known material information shows intent. *Id*. Affirmative acts of egregious misconduct may also give rise to an intent to deceive. *Id*. at 1287. In addition, multiple false statements and repeated material omissions support a finding that a specific intent to deceive is the single most reasonable inference. *See Nilssen v. Osram Sylvania, Inc*., 504 F.3d 1223, 1235 (Fed. Cir. 2007) (affirming inequitable conduct where issues collectively "indicated repeated attempts to avoid playing fair and square with the patent system"); *Luv N' Care*, 98 F.4th at 1098 ("Because an intent to deceive the PTO can be inferred from a person's 'pattern of lack of candor,' a district court must consider the person's multiple acts of misconduct '[i]n the aggregate.'").

In considering inequitable conduct in connection with a motion under 35 U.S.C. § 285, the Court applies the "preponderance of the evidence" standard. *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *6-*7; *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc*., No. 12-764, 2015 WL 1284669, at *5 (E.D. Tex. Mar. 20, 2015) ("[T]he Court will consider [evidence of inequitable conduct] as part of the 'totality of the circumstances' inquiry required by *Octane*, and the totality of the evidence . . . will be weighed using the preponderance of the evidence standard."); *Novartis Corp. v. Webvention Holdings LLC*, No. 11-3620, 2015 WL 6669158, at *4 n.5 (D. Md. Oct. 28, 2015) ("Regardless of whether [the prevailing party] could establish that [the patent owner] engaged in inequitable conduct before the PTO, this court finds that [the patent owner's] actions at least justify an inference of improper motivation or subjective bad faith, both of which can include a district court's totality of the circumstances inquiry upon a showing of a preponderance of the evidence."). The Court uses the inequitable conduct framework of materiality and intent as a guide in considering a party's conduct before the PTO, but the relevant inquiry is the *Octane*

standard, *i.e.*, whether the case "stands out from others with respect to the substantive strength of a party's litigating positions (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *8 (citing *Octane Fitness*, 134 S. Ct. at 1756).

### B.    Telebrands Is the Prevailing Party

A defendant need not prevail on the merits to be classified as a prevailing party. *Raniere*, 887 F.3d at 1306; *see B.E. Tech., L.L.C. v. Facebook, Inc*., 940 F.3d 675 (Fed. Cir. 2019) (defendant obtaining court-ordered dismissal of plaintiff's patent infringement claims based on mootness of causes of action resulting from PTO's cancellation of the asserted patent claims, and successfully moving for fees as the prevailing party, as affirmed by the Federal Circuit).

In connection with the dismissed cases, Telebrands successfully procured a material alteration in its legal relationship with Plaintiffs, in that Plaintiffs no longer have the ability to enforce the since-cancelled patents-in-suit against Telebrands and Telebrands' accused products, thus rendering Telebrands the sole prevailing party. *See Luv N' Care*, 98 F.4th at 1105 ("LNC successfully achieved a material alteration in its legal relationship to EZPZ, which no longer has the ability to enforce the '903 patent against LNC's accused products."); *United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362, 1368 (Fed. Cir. 2023) (finding party prevailed where opposing party "can never again assert the same patents against . . . [the] same accused products").

Further compelling is the Court's Memorandum Order of January 15, 2025 (Dkt. No. 506 in 13-7752) dismissing *with prejudice* all of Plaintiffs' patent infringement claims in the Consolidated Cases. As set out in *Raniere*, which concerned an affirmed dismissal with prejudice based on lack of standing, "[d]ismissal of an action *with prejudice* is *a complete adjudication* of the issues presented by the pleadings and is a *bar to a further action* between the parties." *Raniere*,

887 F.3d at 1308 (emphasis added) (citations omitted); *id.* ("The district court's dismissal with prejudice of Raniere's action gave Appellees the full relief to which they were legally entitled. Thus, to the extent any relief on the merits remains a necessary predicate to prevailing-party status after *CRST*, the dismissal with prejudice here was such a judgment. This suffices to make Appellees 'prevailing parties.'"). For all of these reasons, Telebrands is the prevailing party.

### C.    This Court Should Declare the Dismissed Cases Exceptional

#### 1.    Plaintiffs' Litigating Positions Were Exceptionally Weak and Unreasonable For Perpetuating Patent Infringement Claims Against Telebrands That Were Doomed from Their Inception, Which Became Clearer Throughout the Litigation

"[A] wide variety of proofs can provide the requisite showing of bad faith under § 285." *Kilopass*, 738 F.3d at 1314. "[A] case can be found exceptional when a party prolongs litigation in bad faith." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). "[A] party . . . must continually assess the soundness of pending infringement claims . . . ." *Id.* "When a plaintiff is notified of the defects of its case yet continues to assert its claims in light of overwhelming evidence to the contrary, and proceeds with arguments that a reasonable attorney knows are baseless, it litigates in bad faith." *Astrazeneca AB v. Dr. Reddy's Labs., Ltd.*, No. 07-6790, 2010 WL 1375176, at *4-*7 (S.D.N.Y. Mar. 30, 2010); *see also Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906, 2015 WL 1399175, at *4-*6 (D.N.J. Mar. 26, 2015).

Plaintiffs' patent infringement claims against Telebrands amounted to nothing more than a senseless shakedown founded on patents that were irretrievably invalid, unenforceable, and not infringed. Plaintiffs continually failed to withdraw patent infringement claims they knew were baseless and instead advanced unreasonable litigating positions, prolonging the litigation against Telebrands for nearly ten years by taking such objectively unreasonable positions in an ill-conceived attempt to preserve the patents and Plaintiffs' baseless infringement arguments.

### a.    The '076 and '944 Patents

The '076 patent was flawed with respect to both its validity and enforceability since its filing. The '944 patent, which is a direct continuation of the '076 patent, suffers from the same infirmities.[14] Consequently, Plaintiffs' litigating positions with respect to these patents were unreasonable from the beginning of the case, thus showing Plaintiffs' subjective bad faith. Instead of dismissing the case, Plaintiffs unnecessarily prolonged the litigation by repeatedly attempting to bolster the invalid, unenforceable, and non-infringed '076 and '944 patents.

### (1)    Inequitable Conduct in the Filing of the '076 Patent

Initially, the application that issued as the '076 patent was filed including claims *copied exactly* from the previously issued Berardi '941 patent, which was then owned by Blue Gentian, LLC and subsequently owned by Telebrands. By this action, it is clear that Plaintiffs were trying to *misappropriate* the claimed invention of the Berardi '941 patent for themselves, demonstrating their bad faith and creating the foundation for their unreasonable litigating positions.

Plaintiffs' copying of the claims was *improper* in violation of 35 U.S.C. § 135(b) (pre-AIA), which provided, "A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application *unless such a claim is made **prior to one year** from the date on which the patent was granted*" (emphasis added). The application which resulted in the '076 patent and in which Plaintiffs copied claims from the Berardi '941 patent, was filed on April 25, 2014, more than 18 months (*i.e.*, greater than one year)

---

[14] In particular, inequitable conduct committed during the prosecution of the '076 patent renders the '944 patent, which is a direct continuation of the '076 patent, unenforceable under the doctrine of infectious unenforceability. *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1377 (Fed. Cir. 2006); *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 553-54 (D.N.J. 2005) (infectious unenforceability requires that related patents are unenforceable due to inequitable conduct when they bear an immediate and necessary relation to the inequitable conduct).

after the Berardi '941 patent issued on October 23, 2012. *See* Snow Dec. Ex. 10 (Dkt. No. 80-2 in 13-7752) (Morriss Dep. Tr. Aug. 5, 2015 at 47, 50-52, & 63-64) (Ragner's patent counsel admitting claims were copied and that he did not, nor had a duty to, notify the patent examiner).

Plaintiffs and their patent counsel failed to inform the patent examiner that they copied the previously patented claims,[15] which they were required to do under the PTO's rules in order to comply with their duty of candor to the PTO. 37 C.F.R. § 10.23(c)(7) (defining "[k]nowingly withholding from the Office information identifying a patent or patent application of another from which one or more claims have been copied" as misconduct); MPEP § 2001.06(D) ("Information Relating to Claims Copied from a Patent": "Where claims are copied or substantially copied from a patent, 37 C.F.R. 41.202(a) requires the applicant, at the time he or she presents the claim(s), to identify the patent and the numbers of the patent claims. Clearly, the information required by 37 C.F.R. 41.202(a) as to the source of copied claims is material information under 37 C.F.R. 1.56 and failure to inform the USPTO of such information may violate the duty of disclosure.").

Plaintiffs and their patent counsel intentionally failed to disclose material information to the PTO, including that claims of the '076 patent were copied from another U.S. patent past the permissible period for doing so. The PTO specifically defined this to be material information and is such egregious misconduct to satisfy the materiality prong of inequitable conduct. Further, intent for purposes of inequitable conduct is clear from Plaintiffs' admission to having copied the claims without informing the patent examiner, rendering intent to deceive the single most reasonable inference. The Court would have found the '076 patent unenforceable due to inequitable conduct if it had reached the issue on the merits.

---

[15] First Amended Complaint, Dkt. No. 77 in 16-3474, ¶¶ 69-70 (alleging inventors and patent counsel for '076 patent failed to disclose that claims 9-11, 13-16, and 18 were copied word-for-word from the Berardi '941 patent).

The '076 patent and the subsequent '944 patent issued despite these infirmities—but the patents nevertheless remained unenforceable due to *inequitable conduct*. Plaintiffs' having brought patent infringement claims under the unenforceable '076 and '944 patents and continuing to pursue them throughout the litigation was the most unreasonable litigating position.

### (2)    Inequitable Conduct Confirmed in the Supplemental Examination of the '076 Patent

From the very beginning of the litigation, Telebrands brought claims against Plaintiffs for unenforceability of the '076 patent due to inequitable conduct. Plaintiffs' copying the claims of the Berardi '941 patent without informing the patent examiner was improper. *See* footnote 15 *supra*. Instead of dropping their defective '076 patent infringement claims, Plaintiffs took the further unreasonable action of requesting supplemental examination of the '076 patent in the PTO to attempt to "cleanse" their misconduct with respect to Berardi '941 patent. This resulted in the PTO's conducting post-grant supplemental examination and *ex parte* reexamination of the '076 patent on limited issues during the pendency of this litigation[16] and led to an unnecessary stay of the litigation while the reexamination proceedings were conducted.

Although the '076 patent emerged from the supplemental examination and reexamination uncanceled, Plaintiffs could not shed the inequitable conduct claim against the '076 patent. Telebrands had already pled with specificity and particularity a cause of action for declaratory judgment of unenforceability due to inequitable conduct in the 15-3163 action *prior* to the filing of the request for supplemental examination. 35 U.S.C. § 257(c)(2)(a) (taint of unenforceability cannot be removed through consideration of information in supplemental examination when unenforceability allegation pled with particularity in a civil action).

---

[16] Under the PTO's procedural rules, neither Telebrands nor any third party could participate in these post-grant proceedings.

Moreover, in connection with the reexamination, the PTO's Patent Trial and Appeal Board ("PTAB") made findings directly supporting the inequitable conduct claim. Snow Dec. Ex. 11 (Decision on Appeal). Significantly, the PTAB stated that it could not consider inequitable conduct in the context of the reexamination because the '076 patent had already issued as a result of Plaintiffs' belated copying of the claims without informing the patent examiner; the PTAB stated that "an interference [between the '076 patent application and the Berardi '941 patent] would have been declared and conducted," but the fraudulent conduct during the examination of the '076 patent prevented that from occurring. *Id*. at 6. An interference proceeding in the PTO conducted under the proper standards and burden of proof, had Plaintiffs not improperly prevented the PTO from invoking that proceeding, would have invalidated the '076 patent or prevented the patent from ever issuing; hence, Plaintiffs were motivated to keep their claim copying a secret from the PTO. Nevertheless, despite claiming that it could not address the inequitable conduct issue, the PTAB proceeded to set forth the basis for the inequitable conduct claim in detail. *Id.* at 5-6 (PTAB found that claims of Berardi '941 patent were copied word-for-word into the '076 patent application and that the patent examiner was not informed of the copying).

Although the PTAB could not address the unenforceability of the '076 patent due to inequitable conduct, this Court can and should do so in finding this to be an exceptional case. In light of these post-grant proceedings regarding the '076 patent, Plaintiffs should have reassessed their litigating positions with respect to the '076 patent and the related, infected '944 patent and dropped their patent infringement claims against Telebrands. Instead, Plaintiffs continued to drag out the litigation to multiply the burden on Telebrands and the Court.

> **(3)    Plaintiffs' Own Actions in Correcting the Inventorship of the Berardi '941 Patent Directly Resulted in the PTO's Determination of Unpatentability of the '076 and '944 Patents**

To complicate matters further, Tristar subsequently filed a motion in the 13-1758 case to correct the inventorship of the Berardi '941 patent to add Gary Ragner, one of the named inventors of the '076 and '944 patents, as a co-inventor of the Berardi '941 patent.[17] Judge Hilman granted the motion, which was affirmed on appeal to the Federal Circuit, resulting in *Gary Ragner's designation as a named inventor on the Berardi '941 patent, as well as on both the '076 and '944 patents*. Dkt. Nos. 548 & 585 in 13-1758. This resulted in two issued patents having a common inventor and essentially the same patent claims, which constitutes *impermissible double patenting* that invalidates the '076 and '944 patents. Thus, after the co-inventorship decision, Plaintiffs should have known that they were taking inconsistent patent positions in the Consolidated Cases and the 13-1758 case by using differing tactics to seek two different sets of patents for the same invention and that they could not maintain their causes of action under the '076 and '944 patents.

The consequence of Tristar's *own action* to add Gary Ragner as a co-inventor of the Berardi '941 patent was to render *unpatentable* the '076 and '944 patents, which Tristar had for so long pursued against Telebrands in the Consolidated Cases. Thus, when Telebrands sought reexamination of the '076 and '944 patents *after the co-inventorship determination was final*, the PTO was easily able to find a substantial new question of patentability of these patents for obviousness-type double patenting in light of the copied claims from a patent that now shares *common inventorship*.[18] *See* Snow Dec. Ex. 7 (reexamination orders). Plaintiffs' thoughtless greed in seeking rights to the Berardi '941 patent and related patents, despite their pending patent

---

[17] During the co-inventorship proceedings, Tristar took the inconsistent position that Mr. Ragner made a contribution to the non-spring Berardi '941 patent, despite claiming that Ragner's patents-in-suit in the Consolidated Cases do not require a spring (which they do).

[18] Significantly, the PTO's bases for finding substantial new questions of patentability for obviousness-type double patenting in light of common inventorship did not rely on Telebrands' ownership of the patents-in-suit or the fact that Telebrands filed the reexamination requests for these patents.

infringement claims against Telebrands in the Consolidated Cases based on the unenforceable '076 and '944 patents, resulted in the obliteration of their infringement claims under these patents-in-suit and confirmed the bases of Telebrands' previously pled inequitable conduct claims. Once the inventorship of the Berardi '941 patent was corrected, Plaintiffs undoubtedly should have reassessed their litigating position with respect to the '076 and '944 patents and dropped their infringement claims under these incurably defective patents.

Plaintiffs' change in litigating positions—from misappropriating the Berardi '941 patent in the '076 patent to seeking to add Gary Ragner as a co-inventor of the Berardi '941 patent—further shows why the cases are exceptional. *Source Search Techs., LLC v. Kayak Software Corp*., No. 11-3388, 2016 WL 1259961, at *5-*7 (D.N.J. Mar. 31, 2016) (case exceptional because "this flip-flopping stands out from the others with respect to the substantive strength of a party's litigating position"). After Plaintiffs pursued inconsistent positions in the litigations regarding the '076 and '944 patents, their claims were rendered meritless and the patents were cancelled as a direct result of their own actions. Nothing could more definitively show Plaintiffs' bad faith and unreasonableness as well as the weakness of their litigating position. Plaintiffs continued to litigate these patent infringement claims against Telebrands despite the patents' invalidation resulting from their own misguided legal strategy.

(4)    **Plaintiffs Knew They Had No Infringed Claims to Assert Against Telebrands**

The Court should also be aware of Plaintiffs' further unreasonable litigating strategy in connection with Plaintiffs' causes of action under the '076 and '944 patents. During the course of the litigation, Plaintiffs unsolicited told the Court that they were willing to *forgo* claims under some of the asserted patents, including all the asserted claims of the '944 and '057 patents. Dkt. No. 334 in 13-7752, at 2-3 (Plaintiffs indicating willingness "to proceed on a much-narrowed set

of asserted patent claims" under the '448 and '076 patents only). At that time, Plaintiffs also stated that they were only looking to pursue a subset of the asserted claims of the '076 patent, namely claims 15-18. *Id*. The unreasonableness of Plaintiffs' litigating position is demonstrated by their blithe disregard of the '944 patent infringement claims it had been pursuing for years in the Consolidated Cases and was underscored by their unreasonable, frivolous selection of a subset of the asserted claims of the '076 patent to pursue.

Significantly, independent claim 15, and claims 16-18 depending therefrom, of the '076 patent all recite a "method of transporting a fluid" and require the steps of "securing a first coupler to said first end of said inner and said outer tubes" and "securing a second coupler to said second end of said inner and said outer tubes." Snow Dec. Ex. 2 ('076 patent). As has always been clear to the parties, the accused POCKET HOSE products are manufactured abroad; it follows that required steps of the claimed method, namely those involving *securing the couplers to the tubes to construct the hose*, are not performed in the United States by Telebrands or its customers and thus there can be no infringement of these method claims.[19] *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("We therefore hold that a process cannot be "used" within the United States as required by section 271(a) unless each of the steps is performed within this country. . . . Therefore, as a matter of law, these claimed methods could not be infringed by use of [accused] system."); *Zoltek Corp. v. United States*, 51 Fed. Cl. 829, 836 (2002) ("if a private party practiced even one step of a patented process outside the United States, it avoided infringement liability, as section 271(a) was limited to acts committed within the United States").

---

[19] Neither Telebrands nor its customers for the accused POCKET HOSE products in the United States put the components of the hose together or take any action to secure the couplers to the ends of the tubes, and Telebrands does not instruct them to do so. *See* Iyer Dec. ¶ 9 (explaining that all POCKET HOSE products have been manufactured and assembled outside the United States and that the steps of securing the couplers to the ends of the tubes do not occur in the United States).

By these actions, Plaintiffs made clear that they knew they did not have any viable patent claims under the '076 and '944 patents. *Eltech Sys.*, 903 F.2d at 811 (Where "the patentee is manifestly unreasonable in assessing infringement, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence."). Plaintiffs pursued their infringement claims under the '076 and '944 patents against Telebrands in bad faith, failing to assess that they had an unreasonably weak litigating position from the outset.

### b.      The '057 Patent

In reexamination, the PTO cancelled the asserted claims of the '057 patent. Snow Dec. Ex. 12 (reexamination certificate). The PTO found a substantial new question of patentability based on *prior art*, Snow Dec. Ex. 7 (reexamination orders), which by definition means publicly available patents or other publications that pre-dated the invention and bear on the patentability of the '057 patent. 35 U.S.C. § 301 (*ex parte* reexamination based on "prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent"). Because the prior art pre-dated the '057 patent, Plaintiffs should have known about—and should have adequately searched for and found—such invalidating art *prior* to and while pursuing their '057 patent infringement claim against Telebrands (particularly in light of the self-destructive actions they took regarding the '076 and '944 patents), thereby showing their litigating position to be unreasonable.

Plaintiffs' infringement claim under the '057 patent was also unsustainable because it was eminently clear to anyone—including Plaintiffs—that the asserted claims of the '057 patent were not infringed. Asserted independent claim 13, and the claims depending therefrom, all require *stretching the claimed hose <u>twice</u> to lengthen it.* Snow Dec. Ex. 4 ('057 patent) (claim 13 for a "method of operating a retractable hose" reciting (1) "stretching the retractable hose from the

extended length to a stretched length by exerting a pulling force on the retractable hose when it is at its extended length, wherein the stretched length is greater than the extended length and is less than or equal to a fully extended length" and (2) "stretching the retracting hose beyond its fully extended length"). Plaintiffs' technical expert acknowledged this during his deposition. Snow Dec. Ex. 13 at 158 (Lueptow Dep. Tr. excerpt) (agreeing method claim 13 includes "two different stretching steps"). However, not only would no hose user ever stretch a hose to lengthen it in order to use it (let alone twice!)—and Telebrands would never instruct them to do so—but also Plaintiffs could not even set out a rational basis for such an allegation in their patent infringement contentions. Iyer Dec. ¶ 10; Snow Dec. Ex. 14 at 6-9 (Plaintiffs' infringement contentions for '057 patent) (alleging *single* image of a "stretch" of indeterminate strength with no length extension of POCKET HOSE product to correspond to *both* stretches required by claim 13).

If it had reached the merits of the case, this Court would have come to the same conclusion as the PTO that the asserted claims of the '057 patent were unpatentable and would have determined that the asserted claims were not infringed. In fact, Plaintiffs never intended this Court to reach their '057 patent infringement claim on the merits. During the course of the litigation— recognizing the futility of their '057 patent infringement claim—Plaintiffs told the Court that they were willing to *forgo* their claims under the '057 patent as well. Dkt. No. 334 in 13-7752, at 2-3 (Plaintiffs indicating willingness "to proceed on a much-narrowed set of asserted patent claims" under the '448 and '076 patents only). This Court should conclude that even the Plaintiffs knew they did not have a reasonable litigating position with respect to the '057 patent since Plaintiffs themselves were willing to set the claim aside midstream as unnecessary.

c.      The '448 Patent

The PTO cancelled those claims of the '448 patent asserted by Plaintiffs in this litigation on December 15, 2022, as a result of the *first* reexamination of the '448 patent. Snow Dec. Ex. 15 (reexamination certificate). In connection with the reexamination, the PTO's finding of a substantial new question of patentability of those claims was based on publicly available *prior art*, Snow Dec. Ex. 16 (reexamination order), which by definition means publicly available patents or other publications that pre-dated the invention and bear on the patentability of the '448 patent. 35 U.S.C. § 301. Because the prior art pre-dated the '448 patent, Plaintiffs should have known about— and should have adequately searched for and found—such invalidating art *prior* to and while pursuing their infringement claim under the '448 patent against Telebrands (particularly in light of the actions they took regarding the '076 and '944 patents), thus showing their litigating position to be unreasonable.

Plaintiffs' claims under the '448 patent were also untenable from their inception because Telebrands' POCKET HOSE products clearly did not infringe the asserted claims of this patent. All of the asserted '448 patent claims require a "biasing means," which, based on the patent's specification, must be a spring that is a separate element from the hose body itself. Snow Dec. Ex. 1 at col. 24, ll. 62-64 ('448 patent) (claim 13 recites a separate "biasing means *interconnected with* said flexible elongated body for generating a first force tending to retract said flexible elongated body") (emphasis added).[20] In fact, the '448 patent does not disclose an embodiment *without* a spring or that functions or looks anything like the POCKET HOSE products, all of which actually include inner elastic tubes and outer fabric covers unconnected except at their ends—and no spring.

---

[20] The "biasing means" is defined in the specification of the '448 patent as a "spring." Snow Dec. Ex. 1 at col. 1, l. 53 & col. 2, l. 7. In terms of claim 1, the "hose cover material," which provides the flexible elongated body for the hose, cannot be the "biasing means" that is (and must be) a separate component "*interconnected with* said flexible elongated body." *Id*. at col. 4, ll. 64-66 & col. 23, ll. 35-37.

If it had reached the merits of the case, this Court would have come to the same conclusion as the PTO that the asserted claims of the '448 patent were unpatentable and would have determined that the asserted claims were not infringed.[21] Moreover, despite the PTO's cancellation of the asserted claims of the '448 patent on December 15, 2022, Plaintiffs persisted in this litigation undaunted, asserting claims of the three other patents—facially unenforceable and non-infringed patents—despite the demonstrated lack of diligence in their pre-suit investigation and throughout the litigation. This was further unreasonable in light of the fact that upon the mootness of the patent infringement claims under the '448 patent resulting from the first reexamination, Plaintiffs had lost any claim for patent damages prior to 2015 in this litigation. For all of these reasons, Plaintiffs' litigating positions in connection with the '448 patent were unreasonable throughout.

### 2. Plaintiffs Litigated the Consolidated Cases in an Unreasonable Manner

As set forth above, Plaintiffs brought patent infringement claims under the '944 patent and the '057 patent that they knew were baseless or never intended to pursue before the Court.[22] Plaintiffs' goal in the litigation was to make the case as complicated and expensive as possible *for as long as possible* to harass Telebrands and to waste the time and resources of this Court.

Moreover, Plaintiffs should have recognized their fatal error in March 2022 in providing Telebrands with a *unilaterally* granted (*i.e.*, no mutual agreement) covenant not to sue on the '560 patent, the implied license to all of the patents-in-suit attendant to this grant, and the futility of continuing their patent infringement claims on the patents-in-suit. Plaintiffs were presented with,

---

[21] Plaintiffs were desperate for *another* Court, which they believed may be more amenable to their baseless arguments, to hear its patent infringement claim against Telebrands under the '448 patent. Plaintiffs' misguided tactic of filing the action in the District of Delaware, which later became the 15-8185 case, further shows the unreasonableness of their litigating position.

[22] Plaintiffs had also asserted patent claims of the '076 and '448 patents that they were willing to drop at the same time.

and fully cognizant of, the prevailing case law that this unilateral covenant not to sue operates by law as an implied license to all of the patents-in-suit and that any purported disclaimer Plaintiffs may have sought to include is ineffective to negate the implied license. Dkt. No. 354 in 13-7752, at 7; *ICOS Vision Sys. Corp. v. Scanner Techs. Corp.,* No. 10-604, 2012 WL 512641, at *5 (S.D.N.Y. Feb. 15, 2012) (citing *TransCore, LP v. Electronics Transaction Consultants Corp.,* 563 F.3d 1271, 1275 (Fed. Cir. 2009)); *In re TR Labs Patent Litig.,* MDL No. 2396, 2014 WL 3501050, at *3 (D.N.J. July 14, 2014) ("A covenant not to sue operates in the same way as an authorized sale or license of a patent product under the patent exhaustion doctrine.") (citing *TransCore,* 563 F.3d at 1276).[23] Thus, Plaintiffs were estopped from any derogation of the covenant not to sue by continuing their claims for patent infringement against Telebrands; to find otherwise would have permitted Plaintiffs to continue a suit for activities they just authorized. Accordingly, as of March 2022, Plaintiffs again failed to reassess their patent infringement claims in light of their unforced error in granting Defendants an implied license to the patents-in-suit.

Even worse, Plaintiffs created an absurd conflict of interest among their counsel by which they single-handedly delayed the progress of the case for an extended period. In particular, Plaintiffs' counsel, which was commonly representing both Tristar and Ragner in the Consolidated Cases, brought suit against, and was directly adverse to, one of these clients (Ragner) on behalf of the other client (Tristar) in violation of New Jersey Rule of Professional Conduct 1.7(a)(1). No.

---

[23] *See also Cheetah Omni LLC v. AT&T Servs., Inc.,* 949 F.3d 691, 695 (Fed. Cir. 2020) (a license to a particular patent impliedly includes a license to all prior patents and continuations that "disclose the same inventions as the licensed patent."); *AMP v. United States,* 389 F.2d 448, 453 (Ct. Cl. 1968) ("[W]here the owner of a patent grants to a licensee the right to use a patented machine, the grant carries with it, by necessary implication, a license under any other patent of the licensor which would be infringed by operation under the grant."); *TransCore,* 563 F.3d at 1279 (This legal estoppel doctrine applies "where a patentee has licensed or assigned a right, received consideration [which includes defeating a declaratory judgment claim], and then sought to derogate from the right granted.").

3:22-cv-05043-MAS-DEA (D.N.J.). Telebrands moved to disqualify Plaintiffs' counsel for this blatant violation of the Rules. Dkt. No. 390 in 13-7752. The Court, however, never reached the disqualification motion on the merits, and it was only after the Court sent the case back to mediation and nine months later that the last of the offending counsel withdrew as counsel (Dkt. Nos. 408 & 416 in 13-7752), having caused unreasonable, unnecessary, and extensive costs and delays to both the process before the Court and the mediation proceedings.

Plaintiffs used these cases as a springboard for other litigation misconduct, which itself shows Plaintiffs' bad faith in pursuing their patent infringement claims in the Consolidated Cases. In connection with the reexamination proceedings for the four patents-in-suit, Tristar made an unwarranted, desperate attempt to interfere with the reexaminations by filing unauthorized and improper submissions. Although the PTO rebuffed Tristar's interference and eventually expunged these submissions *sua sponte*, Tristar caused unnecessary expense and delay that affected both the reexamination proceedings and the progress of the Consolidated Cases [24] to reach their conclusion.[25]

In connection with the present attorney's fees motion, Plaintiffs will undoubtedly complain to this Court about Telebrands' four *ex parte* reexamination proceedings that resulted in the dismissal of all of Plaintiffs' patent infringement claims. The Court should not hear Plaintiffs' complaints, which are baseless and not properly before this Court. The PTO properly ordered the

---

[24] Separate from the reexamination proceedings, Plaintiffs further misused their improper and expunged PTO submissions, attempting to introduce them into these cases and successfully leaking them to the press (Law360) to prejudice Telebrands in the Consolidated Cases in violation of L. Civ. R. 105.1 (Extrajudicial Statements).

[25] The filing of unauthorized and improper submissions in *ex parte* proceedings before the PTO is sanctionable against the patent practitioner in accordance with the PTO's Office of Enrollment and Discipline precedents. Snow Dec. Ex. 17 (decisions sanctioning practitioners for the same conduct in connection with litigation).

reexaminations and found the Telebrands-requested reexamination proceedings to be *compliant* (Snow Dec. Exs. 7-9), and thus it is outside the scope of inquiry of this Court to re-analyze those proceedings—except for acting upon the resulting certificates of reexamination cancelling all of the patent claims. Tristar's actions in continuing to raise legal claims about the reexaminations outside the Consolidated Cases in yet another forum (Northern District of Florida) and to raise baseless and harassing claims against both Telebrands *and its undersigned counsel* reflect an unrelenting unreasonableness as well as a high level of negligence and vindictiveness further indicative of Plaintiff's ongoing litigation misconduct stemming from the Consolidated Cases.

## IV.    THE COURT SHOULD EXERCISE ITS DISCRETION TO AWARD ATTORNEY'S FEES BECAUSE THE CASE IS EXCEPTIONAL AND TELEBRANDS' CLAIMED ATTORNEY'S FEES AND COSTS ARE REASONABLE

Once the Court finds that a case is "exceptional," it must then exercise its discretion to determine whether to award fees. *Kilopass*, 738 F.3d at 1317. Courts do so where "the interest of justice warrants fee-shifting," *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992), because "it would be *grossly unjust* that the winner be left to bear the burden of his own counsel." *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original). An award of attorney's fees is appropriate in this case because Telebrands had to engage in litigation against Plaintiffs for nearly ten years to eliminate—ultimately, by cancellation in the PTO through reexamination—invalid, unenforceable, and non-infringed patents, which was clear to Plaintiffs from the beginning. Plaintiffs had numerous opportunities where they should have reassessed their litigating position and dropped their claims against Telebrands. Plaintiffs' obstreperous actions and litigation misconduct in the Consolidated Cases, and extending to the PTO and other forums, further demonstrates their bad faith pursuit of this litigation.

## V.    FEES AND EXPENSES SOUGHT

The amount of attorney's fees awarded depends on the extent to which the case is exceptional. *Special Devices, Inc. v. OEA, Inc*., 269 F.3d 1340, 1344 (Fed. Cir. 2001). Given the amount of time over which Plaintiffs perpetuated their fraud of a lawsuit against Telebrands, and Telebrands' total victory over Plaintiffs' patent infringement claims, Telebrands deserves full and adequate compensation in this litigation.

In addition, consideration should be given to the fact that as early as February 2016, Plaintiffs were claiming $100 million in damages relating to their infringement claim under the '448 patent. Dkt. No. 24 in 15-3163 (Counterclaim ¶ 44). Telebrands was fully justified in retaining experienced counsel—who expended significant effort—for a case of this size and in charging them with vigorously defending Telebrands in this litigation.

In light of the interconnected nature of the patent infringement claims under all four patents-in-suit litigated together in the Consolidated Cases, Telebrands' request for fees includes all legal work associated with the patent infringement claims in the four cases involving Telebrands. There is no way to separate out the legal work between these cases, and Telebrands had to mount its defense to all of Plaintiffs' patent infringement claims in unison.

Moreover, Telebrands' request for fees includes legal work for proceedings before the PTO, including the several reexamination proceedings conducted during the litigation. Such *ex parte* reexamination requests were not parallel proceedings that could have been conducted before this Court, but Telebrands was forced to perform before the PTO the same kind of work to invalidate the patents-in-suit that it would have had to perform at trial in the Consolidated Cases.

**ATTORNEY'S FEES**: Under Third Circuit law, attorney's fees are calculated using the "lodestar" approach, which requires multiplying the amount of time reasonably expended by

reasonable hourly rates. *Lugus IP*, 2015 WL 1399175, at *6. The party seeking fees bears the initial burden of proving the reasonableness of the time and hourly rates used in the lodestar calculation and, once proven, the adverse party bears the burden of challenging the reasonableness of the requested fees. *Id*. The accompanying Declaration of Jeffrey L. Snow in Support of Fees and Expenses Determination ("Snow Fees Dec.") provides a breakdown of the various fees billed and paid by Telebrands, the attorney time spent on these cases, and hourly rates for each attorney for which recovery is sought. As shown in the additional accompanying declaration from Gary Greenfield, an expert in analyzing billing rates in the legal industry, the attorney rates billed to Telebrands are in line with those of comparable firms. Accordingly, Telebrands seeks $2,928,967.36 in attorney and staff fees for the law firms of Pryor Cashman LLP and Stone & Magnanini LLP, which have represented Telebrands in this litigation. Snow Fees Dec. ¶¶ 11 & 22.

**EXPENSES**: A fees award under 35 U.S.C. § 285 includes "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *see also Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. 12-1285, 2016 WL 3436396, at *5 (D. Del. June 15, 2016) (allowing expenses relating to "travel, food, lodging, mail, photocopying, facsimile, courier, filing fees, deposition transcripts, subpoena services, and other related services"). The Snow Declaration itemizes the specific expenses sought by Telebrands, which total $493,305.25. Snow Fees Dec. ¶¶ 11 & 23.

## VI.    CONCLUSION

For all of the reasons set forth herein, Telebrands respectfully requests that this Court award it just compensation under 35 U.S.C. § 285 and the Court's inherent equitable powers.

Dated: February 14, 2025

Respectfully submitted,

s/Jeffrey L. Snow_____          s/David S. Stone_____
Jeffrey L. Snow                      David S. Stone
**PRYOR CASHMAN LLP**                **STONE & MAGNANINI LLP**
7 Times Square                       100 Connell Drive
New York, New York 10036             Berkeley Heights, New Jersey 07922
(212) 421-4100                       (973) 218-1111
jsnow@pryorcashman.com               dstone@smcomplex.com

*Attorneys for Telebrands Corp. and Bulbhead.com, LLC*

31